THE STATE, EX REL. POLAROID COR-
PORATION, APPELLANT AND CROSS-
APPELLEE, *v.* DENIHAN, DIR., ET AL.,
APPELLEES AND CROSS-APPELLANTS;
NBS IMAGING SYSTEMS, INC.,
APPELLEE.

(No. 86AP-730—Decided
December 9, 1986.)

*Jones, Day, Reavis & Pogue, John W. Zeiger, Maynard F. Thomson* and *Steven J. McDonald,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Nancy J. Miller* and *Thomas L. Rosenberg,* for William Denihan, Director of the Dept. of Highway Safety, Michael J. McCullion, Registrar of Motor Vehicles, William G. Sykes, Director of the Dept. of Adm. Services and Nappy M. Hetzler, Administrator of State Purchasing.

*Teaford, Rich, Belskis, Coffman & Wheeler, Hamilton J. Teaford, Jeffrey A. Rich, J. Gary Coffman* and *Mark A. Leiendecker,* for NBS Imaging Systems, Inc.

WHITESIDE, J. Relator, Polaroid Corporation, appeals from a judgment of the Franklin County Court of Common Pleas and raises three assignments of error as follows:

"1. The trial court erred as a matter of law in holding that the state appellees did not have a clear legal duty to award the Ohio Driver License Program contract to Polaroid as low bidder and that Polaroid did not have a clear legal right to the award, in that the state appellees expressly intended to include Polaroid's plastic-coated film within their base material specification and determined, prior to the bid opening, that the Polaroid film satisfied their announced specification.

"2. The trial court erred as a matter of law in holding that the state appellees were not barred, pursuant to the doctrine of promissory estoppel, from rejecting Polaroid's bid.

"3. The trial court erred as a matter of law in holding that an action for damages in the Court of Claims constituted an adequate remedy at law for the unlawful rejection of Polaroid's lowest and best bid for the Ohio Driver License Program contract."

Respondents, William Denihan, Director of the Department of Highway Safety, Michael J. McCullion, Registrar of Motor Vehicles, William G. Sykes, Director of the Department of Administrative Services, and Nappy M. Hetzler, Administrator of State Purchasing, have also filed an appeal and raise a single assignment of error as follows:

"The trial court erred as a matter of law in holding that injunctive relief and a temporary restraining order may be issued against the State of Ohio, agencies and officials therein in a court of common pleas."

On March 21, 1986, bids were received by the Administrator of State Purchasing, Department of Administrative Services, for supplying the state with film, cameras and supplies for the Ohio Color Photographic Drivers' License Program to enable the Registrar of Motor Vehicles to fulfill his statutory duties pursuant to R.C. 4507.13 with respect to the issuance of drivers' licenses. Only two bids were received, one from relator Polaroid Corporation and the other from intervening-respondent, NBS Imaging Systems, Inc., with relator Polaroid being the apparent low bidder. On May 20, 1986, the Department of Administrative Services, acting through respondent Nappy Hetzler, rejected all bids directing a letter to relator Polaroid stating that:

"Please be advised that all offers sent in response to the above referenced Invitation To Bid have been rejected. The apparent low bidder was rejected as the sample provided failed to meet material composition and bid specifications. The remaining bidder was rejected due to lack of competitive pricing."

Shortly therafter, relator Polaroid brought this action seeking a writ of mandamus ordering respondents to award the contract to relator Polaroid Corporation, as well as injunctive relief to enjoin respondents from awarding the contract to anyone other than Polaroid. Upon being granted leave to intervene, intervening-respondent NBS Imaging Systems, Inc. ("NBS") filed a cross-claim seeking a writ of mandamus ordering respondents to award the contract to it. The case proceeded to trial, resulting in a directed verdict at the conclusion of Polaroid's case. The cross-claim of intervening-respondent NBS was dismissed without prejudice at its request. In the judgment entry, the trial court made the following findings:

"1. Plaintiff-Relator, Polaroid Corporation, failed to prove that Plaintiff-Relator has a clear legal right to the relief prayed for, that being the award of contract sought. Any discussions and statements made by Defendant[s]-Respondents were in the nature of preliminary discussions and were insufficient to commit the deciding authority to action.

"2. Plaintiff-Relator, Polaroid Corporation, failed to prove that Defendant[s]-Respondents Denihan, McCullion, Sykes and Hetzler had a clear legal duty to award the contract sought for the reasons that the State of Ohio has the right to reject any and all bids when done in compliance with law, and that the actual words of the specification in question in this action when viewed by an objective viewer state that the eventual product must be plastic without the presence of a paper element. The evidence presented established that the product of Plaintiff-Relator contained a paper element.

"3. Plaintiff-Relator, Polaroid

Corporation, has an adequate remedy at law for the reason that had Plaintiff-Relator sustained measurable damages there is a forum and procedure for Plaintiff-Relator to seek relief for damages.

"4. The Court has jurisdiction to award the relief sought in this action."

Prior to advertising for bids, a prebidding conference was conducted, at which representatives of Polaroid and NBS, as well as respondents McCullion and Hetzler, were present. Respondents expressed a desire that competition be afforded by competitive bidding, Polaroid and NBS being the only two companies known to be capable of fulfilling the needs of the Department of Highway Safety with respect to the drivers' license program. Assurance of competitive bidding was complicated by the fact that, while the film of NBS is all plastic, that of Polaroid contains some paper. The notes of respondent Hetzler made at the prebidding conference on a copy of draft specifications contains a notation that "[t]he material needs to be identified," and the words "polyester or polycarbonate or equal."

Between the prebidding conference and the submission of bids, representatives of Polaroid contacted respondent McCullion, Registrar of Motor Vehicles, on several occasions seeking confirmation that the Polaroid film would meet the contract specifications. Polaroid representatives testified that they received such assurances; whereas, the state officials involved testified only to the effect that they assured Polaroid that it was the state's desire to have competitive bidding and to receive a bid from Polaroid as well as from NBS. One of the communications was by a February 25, 1986 letter signed by Polaroid's national marketing manager to respondent McCullion, in which it is stated in part that: "my understanding is that the language reads polyester, polycarbonate or plastic equivalent," and points out that the Polaroid film "consists of 3 mils of poly material, 4 mils of paper material and [an] additional 3 mils of poly." No written response was made to this letter.

Between the prebidding conference and the eventual receipt of bids, a modification of the specifications was suggested by the Bureau of Motor Vehicles, which would include the sentence: "The entire license must be made of plastic with no paper materials included." This language was specifically rejected by respondent Hetzler for the reason that such specification would probably preclude Polaroid from bidding. Nevertheless, the specification adopted and used in the bidding documents as the requirement for the film states:

"The driver license shall be photographically applied to the base material. This material shall be either polyester, polycarbonate or an equivalent plastic and shall be a minimum of 7.5 mils in thickness."

Apparently, the bidding documents containing this specification were originally prepared on or about February 28, 1986 and were again included in an addendum issued March 13, 1986. Immediately prior to submitting its bid, Polaroid's Director of Government Sales and Marketing sent a telegram to respondent Hetzler seeking advice as to whether Polaroid's "polyethylene plastic coated 669 color identification film qualifies as an acceptable product," under the bidding specifications. In the telegram, it was specifically noted that:

"If the specification for ' * * * polyester, polycarbonate or equivalent plastic film * * *' is construed restrictively to rule out Polaroid's standard plastic-coated driver license film then we cannot bid on this contract and must protest that we are arbitrarily

and unreasonably being precluded from bidding * * *."

No response was made to the telegram, and Polaroid submitted its bid predicated upon the film referred to in the telegram.

As required by the bidding documents, each bidder submitted sample licenses using the film bid for testing by the state. Subsequent to receipt of the bids, the Department of Administrative Services, acting through respondent Hetzler, had the sample licenses submitted by each bidder tested by an independent testing laboratory, Battelle Columbus Laboratories, with respect to the compliance with the specification concerning finished licenses as set forth above. Battelle submitted a report stating in part:

"Because of the cellulose fibers (paper) as an internal component of the Polaroid system, it appears that this system may not conform to the ITB [invitation to bid] specification. Since the NBS system is composed entirely of plastic, it appears that this system conforms to the ITB specifications."

After receiving the results of the test, respondent Hetzler determined to reject all bids.

Relator's first assignment of error is couched in terms of whether the trial court erred in failing to find that respondents had a clear legal duty to award the contract to Polaroid as low bidder. However, the threshold issue is whether respondents, and specifically respondent Hetzler, abused their discretion in rejecting all bids. The issue expressly raised by relator Polaroid arises only if respondents were required to make an award pursuant to the bids received in response to the invitation to bid, in which event the question would arise as to whether respondents could reject the bid of relator Polaroid and award a contract to intervening-respondent NBS.

R.C. 125.11(A) expressly provides that: " * * * The department of administrative services may accept or reject any or all bids in whole or by items * * *." In addition, paragraph four of the "Instructions and Conditions for Submitting Bids" portion of the bidding documents states specifically: "The Office of State Purchasing may accept or reject any or all bids, in whole or in part, and may waive minor defects in a bid, if no prejudice results to the rights of another bidder or to the public."

In *State, ex rel. [Cleve. Trinidad Paving Co.,]* v. *Bd. of Public Service of Columbus* (1909), 81 Ohio St. 218, 90 N.E. 389, the Supreme Court held that a public agency was not required to award a contract to the lowest bidder, even though the agency had first determined to do so without communicating its decision to the lowest bidder and then determined to reject all bids. The first paragraph of the syllabus of that case reads as follows:

"By section 1536-679, Revised Statutes, pertaining to the letting of contracts for street improvements, discretion is given a board of public service to reject any and all bids, and this discretion will not be interfered with by mandamus where such discretion has not been abused and no vested right of any bidder is involved."

Accordingly, a determination to reject all bids rather than to award a contract to the lowest bidder does not *per se* constitute an abuse of discretion even though the bid of such lowest bidder meets the specifications.

Relator relies upon *Boren & Guckes* v. *Commrs. of Darke Cty.* (1871), 21 Ohio St. 311, as requiring an award to it as the lowest bidder. *Boren & Guckes,* however, involved a statute requiring a bid to be awarded to the lowest bidder, with no provision for the rejection of all bids. *Boren & Guckes* was expressly held not to be applicable where a statute provided for an award

of a contract to the lowest and best bidder in *State, ex rel. H.P. Clough & Co.,* v. *Commrs. of Shelby Cty.* (1881), 36 Ohio St. 326, and *State, ex rel. Walton,* v. *Hermann* (1900), 63 Ohio St. 440, 59 N.E. 104, the syllabus of which reads:

"A statute which confers upon a board of public officers authority to make a contract 'with the lowest and best bidder,' confers upon the board a discretion with respect to awarding the contract which can not be controlled by mandamus."

Relator also relies upon *Dayton, ex rel. Scandrick,* v. *McGee* (1981), 67 Ohio St. 2d 356, 21 O.O. 3d 225, 423 N.E. 2d 1095. However, not only did that case not involve the rejection of all bids, it involved an award of a contract to other than the lowest bidder predicated upon standards not made part of the bidding specifications, resulting in the issuance of a permanent injunction against the entering into of a contract with the higher bidder. *Scandrick* would be pertinent only if the respondents were attempting to award the contract to NBS, rather than rejecting all bids.

None of the cases relied upon by relator involves the rejection of all bids and, thus, does not constitute authority upon the issue before us, namely, whether respondents abused their discretion in rejecting all bids. See *State, ex rel. Gordon,* v. *Rhodes* (1952), 158 Ohio St. 129, 48 O.O. 64, 107 N.E. 2d 206.

Relator further contends that the word "equivalent" means functionally equal or identical and that its bid should not have been rejected because its film is functionally equal to that of NBS. Disregarding for the moment the fact that the word "equivalent" in the specifications modifies the word "plastic," the test urged by relator is a patent law concept application of which is limited to the patent law doctrine of equivalence under which equivalency is determined by functional identity. In other uses, the word "equivalent" means equal or identical or of equal value, force, import and effect. Thus, the words "substantially equivalent" were determined in *Sutto* v. *Bd. of Medical Registration & Examination* (1962), 242 Ind. 556, 566, 180 N.E. 2d 533, 538, to mean "that which is equal in value in essential and material requirements." For competitive bidding purposes, equivalency is determined by whether the item bid is both functionally and qualitatively equal or identical to the specific specification to which the equivalency standard applies.

Had the specification been written as suggested in respondent Hetzler's notes to require "polyester or polycarbonate or equal," or as suggested in relator's February 25, 1986 letter as requiring "polyester, polycarbonate or plastic equivalent," perhaps an issue would arise as to whether relator's film, composed partly of paper, would constitute an equivalent under that standard. However, the specification was not so written but, instead, requires that the base material "be either polyester, polycarbonate or an equivalent plastic." The trial court correctly noted that the plain meaning of this requirement is that the base material be plastic and must consist of either polyester, polycarbonate, or another plastic which is the equivalent of polyester or polycarbonate. Intervening-respondent NBS suggests that the requirement that the material "be a minimum of 7.5 mils in thickness" means that the plastic portion of the base material be 7.5 mils in thickness even though it may also contain other materials such as paper, and that Polaroid's film does not qualify since it contains at most 6 mils of plastic. This contention of intervening-respondent NBS is no more meritorious than that of relator Polaroid that paper constitutes "an equivalent plastic" to

polyester or polycarbonate. Even in the absence of application of the ordinary understanding of the distinction between plastic and paper, there was specific testimony that paper (cellulose fibers) is not plastic, and no evidence that paper is plastic. Although conceivably paper could be considered plastic when the word is used as an adjective, paper does not constitute plastic when the word is used as a noun.

There is also evidence that one of the sample drivers' licenses submitted by relator Polaroid with its bid was torn in half apparently without difficulty. Were this the predicate for rejection of Polaroid's bid, arguably, the rule of *Scandrick* would be applicable since tear resistance appears not to have been a specific bid requirement, although the bidding documents do require that:

"The color photographic image must remain stable and survive intact under conditions of strenuous wear and tear, and the photographic image must not significantly deteriorate or discolor during the four and one-half (4½) years of life of the license, nor shall the printed matter deteriorate or become illegible."

However, that was not the predicate for the rejection of relator Polaroid's bid; instead, the predicate was that the Polaroid film did not meet the specification requirement that the base material "be either polyester, polycarbonate or an equivalent plastic."

Nevertheless, as stated above, the threshold issue before us is whether respondents, and specifically respondent Hetzler, abused their discretion in rejecting all bids rather than making an award to the lowest and best bidder, whichever that might be. Relator Polaroid has not demonstrated an abuse of discretion in the rejection of all bids. Although respondents had in-dicated a desire for full competitive bidding, including the receipt of a bid from relator Polaroid, the specific bidding specification included in the invitation to bid and forming a part of any eventual contract was that the base material "be either polyester, polycarbonate or an equivalent plastic." Respondent Hetzler submitted samples of drivers' licenses submitted by both bidders with their bids to Battelle for testing. She was advised specifically that such testing revealed that the Polaroid bid might not meet the specifications because its finished license contained cellulose fibers (paper) as an integral component; whereas, the NBS bid conformed to the specification because its finished license is composed entirely of plastic. She also had been advised by telegram from relator Polaroid, received just before bids were submitted, that relator Polaroid would consider the specifications to be arbitrary and unreasonable and to preclude it from bidding, if construed to require a base material composed entirely of plastic, which would exclude Polaroid's standard plastic-coated drivers' license film from consideration.

Accordingly, if respondent Hetzler determined to award the bid to relator Polaroid, there was a possibility that she would be confronted with an action brought by intervening-respondent NBS, such as the cross-claim filed by it herein, contending that the only bid meeting contract specifications was that made by intervening-respondent NBS. On the other hand, if she determined to award the contract to NBS, there was a possibility that she would be confronted by an action brought by relator Polaroid such as this action, which it did bring.

Defendant Hetzler was also confronted with specifications written slightly differently than some evidence would indicate had been contemplated

in that the base material was required by the specification to be "an equivalent plastic," rather than a "plastic equivalent," as suggested by her notes made at the prebidding conference. She was also confronted with advice from Battelle that test results indicated that the sample drivers' license submitted by Polaroid might not meet the bidding specifications. The rejection of all bids under such circumstances does not constitute an abuse of discretion. Had she rejected Polaroid's bid as not meeting the specifications and awarded the contract to NBS, clearly, under the total circumstances, true competitive bidding would not have been involved since there was only one bidder whose bid could meet the specifications. On the other hand, if she awarded the bid to Polaroid, she would have awarded the contract to a bidder whose bid did not meet the plain meaning of the bidding specification. Since respondent Hetzler did not abuse her discretion in rejecting all bids, the first assignment of error is not well-taken.

By its second assignment of error, relator Polaroid contends that respondent should be estopped from rejecting Polaroid's bid as not complying with the bidding specifications. As respondents point out, ordinarily the doctrine of promissory estoppel does not apply to state agencies. See *Griffith* v. *J. C. Penney Co.* (1986), 24 Ohio St. 3d 112, 24 OBR 304, 493 N.E. 2d 959, and *Chevalier* v. *Brown* (1985), 17 Ohio St. 3d 61, 17 OBR 64, 477 N.E. 2d 623.

Furthermore, the evidence is not such as to require application of equitable estoppel, even if it were applicable under the circumstances. Although respondent McCullion had assured relator Polaroid that it was the desire of the state to receive a bid from Polaroid, no sample drivers' license or film was submitted to Polaroid prior to its submission of its bid, and its representative admitted that no state officer or employee ever told him that Polaroid's film is an equivalent plastic within the meaning of the specification requirement. If there were representations, they were as to how it was intended to write the specifications, rather than the meaning of the specification as eventually written. Furthermore, there is some evidence that Polaroid did not rely exclusively on representations previously made as to bidding requirements since, just before submitting its bid, it directed a telegram to respondent Hetzler seeking assurance "as to whether our film product qualifies as an acceptable film product for the Ohio driver's license." The actual specification was quoted in the telegram with a suggestion of a possible construction of the bidding specification to require a plastic film and, thus, rule out Polaroid's "standard plastic-coated driver license film." Even without receiving a response to the telegram, Polaroid submitted its bid.

Since estoppel does not ordinarily apply to state agencies, and since the evidence would permit a finding by the trial court that the elements of estoppel are not present even if the doctrine applied, the second assignment of error is not well-taken.

By the third assignment of error, relator Polaroid contends that the trial court erred in finding that it had an adequate remedy at law by way of an action for damages in the Court of Claims. Since relator Polaroid did not demonstrate a clear legal right to the requested writ, any error in the trial court in considering the alternative issue of adequate remedy at law is not prejudicial. Accordingly, the third assignment of error is not well-taken.

The assignment of error raised by respondents raises a jurisdictional question. They contend that the court of common pleas lacks jurisdiction to

grant injunctive relief and, therefore, lacks jurisdiction over this action. This contention is predicated upon relator's original prayer for injunctive relief, which was later amended to request "ancillary protective relief," which necessarily would have been injunctive in nature if granted. We agree that, where injunctive relief is necessary to afford a meaningful remedy, mandamus is not a proper remedy for, as stated in the opinion of *State, ex rel. Corron,* v. *Wisner* (1971), 25 Ohio St. 2d 160, 163, 54 O.O. 2d 281, 283, 267 N.E. 2d 308, 310-311, "[w]here, as here, an action in mandamus does not provide effective relief unless accompanied by an ancillary injunction, it would appear that injunction rather than mandamus is the appropriate remedy." However, this action was brought in the common pleas court for statutory mandamus pursuant to R.C. Chapter 2731, which court also has jurisdiction over actions for injunction.

In support of their contentions, respondents point out that the state cannot be sued without its consent and that the primary consent to sue is that contained in R.C. Chapter 2743, which permits actions against the state to be brought only in the Court of Claims. However, the state is not a party to this action. Rather, this action is brought by relator Polaroid to compel respondents, as state officials, to perform a duty allegedly enjoined by law or alternatively to enjoin them from taking action contrary to law.

It has long been recognized that the bringing of an action against a state officer to compel him to perform a duty required by law or to prevent him from taking action contrary to law does not constitute an action against the state. As stated in *American Life & Accident Ins. Co.* v. *Jones* (1949), 152 Ohio St. 287, 40 O.O. 326, 89 N.E. 2d 301, such an action is not one against the state, for "[i]f it were otherwise it would mean that one could not mandamus a state officer to perform a clearly mandatory duty or one could not enjoin him from committing a patent and outrageously illegal act." *Id.* at 299, 40 O.O. at 332, 89 N.E. 2d at 307. See, also, *State, ex rel. Ferguson,* v. *Shoemaker* (1975), 45 Ohio App. 2d 83, 74 O.O. 2d 109, 341 N.E. 2d 311.

Respondents' reliance upon *State, ex rel. Celeste,* v. *Smith* (1985), 17 Ohio St. 3d 163, 17 OBR 364, 478 N.E. 2d 763, and *Friedman* v. *Johnson* (1985), 18 Ohio St. 3d 85, 18 OBR 122, 480 N.E. 2d 82, as indicating that an action for injunction cannot be maintained in a common pleas court against a state officer, is misplaced. *Friedman* specifically recognized the principle set forth in *American Life & Accident Ins. Co., supra,* with respect to declaratory judgment. We know of no case holding that an action in injunction may not be brought in a common pleas court to prevent a state officer from committing an illegal act. Under such circumstances, the state's interests are advanced by the person bringing the action rather than the state official. There is no reason to bring the action against the state itself since the state officer, by attempting to perform an illegal act, is acting contrary to the state's interests. Only when the real party in interest is the state itself, rather than the state officer, is an action brought against a state officer, whether in injunction or declaratory judgment, deemed to be an action against the state and, thus, required to be brought in the Court of Claims. See *West Park Shopping Center* v. *Masheter* (1966), 6 Ohio St. 2d 142, 35 O.O. 2d 216, 216 N.E. 2d 761. Of course, this action is in mandamus and cannot be brought in the Court of Claims which has no jurisdiction in mandamus. The action was properly brought in the common pleas court.

Accordingly, respondents' assignment of error is not well-taken.

For the foregoing reasons, all three of relator's assignments of error and respondents' single assignment of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and BADGER, JJ., concur.

BADGER, J., of the Knox County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.