OPINION
{¶ 1} Defendant-Appellant, the Administrator for the Ohio Bureau of Workers' Compensation (hereinafter referred to as "the Administrator"), appeals the judgment of the Crawford County Court of Common Pleas, ordering enforcement of a settlement agreement between the Administrator, the Plaintiff-Appellee, Ellen L. Fast, and the Defendant-employer, Basol Maintenance Service (hereinafter referred to as "Basol"). On appeal, the Administrator asserts that the trial court erred in finding that it assented to an enforceable oral settlement agreement which settled Fast's claims against Basol only. Finding that the Administrator did not assent to the terms to which Fast and Basol agreed, we reverse the judgment of the trial court.
 {¶ 2} On January 14, 2003, Fast applied for workers' compensation benefits for injuries she sustained on January 9, 2003, while working for Basol.[1] After reviewing Fast's application for benefits, the Ohio Industrial Commission' (hereinafter referred to as "the Commission") allowed Fast to proceed on claims against Basol for the conditions "sprain left shoulder, sprain of neck." Fast also filed workers' compensation claims against other employers, which were pending simultaneous to her claims against Basol.
 {¶ 3} In July of 2003, after a series of unsuccessful administrative appeals, Basol appealed the Commission's decision to the Crawford County Court of Common Pleas. Accordingly, Fast filed a complaint and jury demand against Basol and the Administrator with the Crawford County Court of Common Pleas in August of 2003.[2]
 {¶ 4} In June of 2004, Fast voluntarily dismissed her complaint in order to pursue settlement negotiations with Basol. After numerous offers and counteroffers, Fast offered $23,000 to settle her claims against Basol. Basol did not reply, and Fast and Basol did not reach an agreement.
 {¶ 5} In May of 2005, Fast timely refiled her complaint against Basol and the Administrator. Subsequently, a trial was scheduled for April 18, 2006. Thereafter, Fast and Basol resumed settlement negotiations, with Basol making a counter-offer of $2,800 in response to Fast's 2004 offer for $23,000 to settle her claims against Basol.
 {¶ 6} In December of 2005, Fast made a counter-offer of $18,000, a copy of which she mailed to the Administrator. Fast's counter-offer referenced only her claims against Basol.
 {¶ 7} In January of 2006, Basol faxed a counter-offer of $4,000 to Fast and also sent a copy of it to the Administrator. Basol's counter-offer referenced only those claims brought against it by Fast.
 {¶ 8} On February 7, 2006, Fast made a counter-offer for $15,000 and sent a copy of it to the Administrator. Fast's counter-offer referenced only her claims against Basol.
 {¶ 9} On February 8, 2006, Fast and Basol held a phone conference, wherein Basol made a counter-offer of $8,750, which Fast accepted. Subsequently, Fast faxed an acceptance letter to Basol and sent a copy to the Administrator. Fast's acceptance letter stated:
 This letter confirms our recent telephone discussion of February 8, 2006 in which you indicated your client's final offer of $8,750.00 for full and final settlement of [Fast's] workers' compensation claims with [Basol]. * * * Therefore, [Fast] accepts [Basol's] offer of $8,750.00 for full and final settlement of all of her workers' compensation claims with [Basol]. Since this is a State fund claim, I am assuming that the Attorney General's office will want to use its form agreement. Therefore, by copy of this letter to [the Administrator], I am requesting that he forward the appropriate documentation to effectuate the agreed settlement of these claims.
(Acceptance Letter p. 1).
 {¶ 10} On February 10, 2006, Basol sent a follow-up letter to the Administrator, which provided:
 This is to confirm that we have reached an agreement, subject to the approval of [the Commission], to settle any and all of [Fast's] workers' compensation claims against [Basol] for the total sum of $8,750. There are actually three different workers' compensation claims which [Fast] has pending against Basol.
(Basol Confirmation Letter, p. 1). Basol's letter also described the allocation of the settlement amount across the three claims. Basol's letter then provided that "per [Fast's] suggestion, we would appreciate it if you would prepare the appropriate documentation to effectuate the agreed settlement and allocation of these workers' compensation claims." (Basol Confirmation Letter, p. 1).
 {¶ 11} On February 17, 2006, the Administrator sent the settlement agreement and dismissal entry forms to Fast with a letter providing "If these documents meet with your approval, please execute and forward them to [Basol] for signature." (February 17, 2006 Correspondence). The enclosed settlement agreement form provided, in pertinent part:
 That said [$8,750.00] * * * will be accepted by [Fast] in full and complete satisfaction and settlement of the cause of action herein involved, and in full and complete satisfaction and settlement of Ohio Workers' Compensation Claim No. 03-302965, as well as any other actual or potential workers' compensation claim(s) * * * occurr[ing] on or before the date of this agreement. * * * Except for the terms, if any, listed in paragraphs four (4) and/or five (5) which follow, the parties to this agreement expressly intend that all claims for work-related death, injury and/or occupational disease(s) * * * be forever relinquished and discharged.
(Settlement Agreement, p. 1). Additionally, paragraph four of the settlement agreement provided that the parties could exclude claims or items from the terms of the settlement agreement. If the parties had no such exclusions, the term "NONE" was to be entered. The Administrator entered "NONE" under paragraph four of the settlement agreement form it sent to Fast. Aside from the language of the settlement agreement, the Administrator did not inform Fast that it intended to cover all of her pending workers' compensation claims in the settlement agreement.
 {¶ 12} On February 27, 2006, Fast modified paragraph four of the settlement agreement by deleting "NONE" and inserting "This settlement affects only [the three] claim numbers [involving Basol] and every other claim is expressly excluded from settlement." (Modified Agreement, p. 2). Fast sent a copy of the modified settlement agreement to the Administrator, along with a letter informing the Administrator of her modification "to make it clear that settlement only contemplates those claims with [Basol] and no other claims that [Fast] has." (February 27, 2006 Correspondence, p. 1).
 {¶ 13} On March 8, 2006, the Administrator replied that it could not agree to the additional language that Fast added to the settlement agreement because "[i]t is the bureau's goal to settle all state fund claims, as reflected in our standard settlement agreement. Absent some compelling reason to leave open a state fund claim, the position of the bureau is to remove a claimant from the state fund system when a lump sum settlement is reached." (March 8, 2006 Correspondence, p. 1).
 {¶ 14} On March 15, 2006, Fast responded to the Administrator's letter:
 My client is agreeable to the settlement of this claim to encompass all of her workers' compensation claims with the exception of [two claims]. Those are valuable new claims whose settlement was never discussed during the lengthy settlement negotiations in this case. * * * In light of the fore-going, I propose that you ask for permission to amend the [Bureau of Workers' Compensation's] standard settlement agreement to expressly exclude [the new claims].
(March 15, 2006 Correspondence, p. 1).
 {¶ 15} On April 6, 2006, Fast and the Administrator held a telephone conference, whereby the Administrator agreed to omit only one of Fast's new claims.
 {¶ 16} On April 10, 2006, Fast moved for an order to enforce the settlement agreement as agreed to by Fast and Basol or, in the alternative, to grant a motion for a continuance of the April 18, 2006 trial date.
 {¶ 17} On May 23, 2006, the trial court issued its memorandum decision, finding that the parties reached an enforceable settlement agreement to settle all of Fast's claims with Basol, only, and ordering enforcement of the settlement agreement. Specifically, the trial court found:
 The settlement discussions in this case contemplated only those claims filed against the risk of Basol. These terms were clearly and unambiguously communicated to the [Administrator] during the course of negotiations. During that time no reservation, counter offer, or the like, was registered by the Administrator to these terms. Thus, when Basol and [Fast] asked the Administrator to manifest its assent to these terms by forwarding the "appropriate documentation to effectuate the agreed settlement," a reasonable mind would expect the Administrator to either (1) manifest its assent to the agreement by mailing a release conforming to the agreement; or (2) clearly refuse the settlement through letter or otherwise. However, an objective mind would not reasonably expect the Administrator to manifest its apparent acceptance to the discussed settlement terms by forwarding a release which — only upon close inspection — went far beyond the scope of the contemplated agreement. Although the Administrator argues in its memorandum that "It was always the [Bureau of Workers' Compensation's] intention to settle all of [Fast's] claims," the Administrator never expressed this intent. And since the "mental reservation of one party that he will not abide by the agreement cannot change its nature or destroy its obligation," the Administrator's unexpressed intention to incorporate non-negotiated terms into its proffered release does not relieve the Administrator of the legal effect of his apparent assent to the terms of the settlement as previously negotiated between the parties. [citations omitted]. The Administrator also argues that * * * [its] form agreement always contemplates settlement of every claim ever filed by a claimant. However, paragraph four of the Administrator's proffered form agreement specifically contemplates exclusion of other claims from a settlement * * *. Thus, clearly, the Administrator's form agreement leaves it to the parties to determine the precise scope of any given settlement agreement. Because the precise scope of the settlement contemplated in this matter was confined to those claims filed with only Basol, those can be the only claims affected by settlement.
(Memorandum Decision, pp. 7-8).
 {¶ 18} It is from this judgment that the Administrator appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED IN FINDING THAT THE ADMINISTRATOR HAD ASSENTED TO AN ENFORCEABLE SETTLEMENT AGREEMENT THAT CONTEMPLATED SETTLEMENT OF ONLY PLAINTIFF'S CLAIMS WITH BASOL MAINTENANCE.
 {¶ 19} In its sole assignment of error, the Administrator contends that the trial court erred in finding that it assented to an enforceable oral settlement agreement that contemplated settlement of the claims against Basol only. Specifically, the Administrator asserts that no meeting of the minds occurred to reach a settlement agreement because it never agreed to settle only Fast's claims with Basol. We agree.
 {¶ 20} The issue of whether an enforceable agreement exists raises a mixed question of law and fact. McSweeney v. Jackson (1996),117 Ohio App.3d 623, 632; Rice v. American Select Ins. Co., 5th Dist. Nos. 2004-CA-00213, 2004-CA-00333, 2005-Ohio-2597, 2005 WL 1242152. Thus, a reviewing court's application of the law to the facts is de novo, but a reviewing court will not reverse a trial court's findings of fact so long as they are supported by some competent, credible evidence. Id.;Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson,Inc., 74 Ohio St.3d 501, 502, 1996-Ohio-158.
 {¶ 21} A settlement agreement is a contract "designed to terminate a claim by preventing or ending litigation." Continental West CondominiumUnit Owners Assn., 74 Ohio St.3d at 502. Creation of a valid contract requires mutual assent, consideration, a meeting of the minds, and reasonably certain and clear terms. Rulli v. Fan Co., 79 Ohio St.3d 374,376, 1997-Ohio-380, citing Noroski v. Fallet (1982), 2 Ohio St.3d 77,79. The proponent of the existence of the settlement agreement has the burden of establishing its existence and its terms. Nilavar v.Osborn (1998), 127 Ohio App.3d 1; Altvater v. Claycraft Co. (1992), 3d Dist. Nos. 16-91-32, 16-91-33, 1992 WL 193727.
 {¶ 22} In the case sub judice, the Administrator contends that it did not assent to the settlement terms as contemplated by Fast and Basol. Mutual assent is normally manifested by offer and acceptance. An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. Leaseway Distrib. Centers, Inc.v. Ohio Dept. of Adm. Serv. (1988), 49 Ohio App.3d 99, 105. The offeree's manifestation of assent constitutes the acceptance. 2 Lord, Williston on Contracts (4 Ed. 1991) 8-9, Section 6:1; McSweeney,117 Ohio App.3d at 631-32.
 {¶ 23} It is undisputed that Fast and Basol reached an oral agreement to settle Fast's claims against Basol for $8,750 during their phone conversation on February 8, 2006, which they subsequently acknowledged in writing. However, in the context of workers' compensation claims the Ohio Supreme Court has determined that the relevant workers' compensation statutes, R.C. 4121.121(B) and R.C. 4123.65,[3] "clearly empower the [Administrator to approve a settlement agreement between an employer and employee in a state fund claim." State ex rel. Carlile v.Ohio Bureau of Workers' Comp., 90 Ohio St.3d 20, 22, 2000-Ohio-6.
 {¶ 24} Here, the Administrator did not assent to the settlement terms agreed upon by Fast and Basol. Basol's letter to the Administrator requesting documentation to effectuate the agreement explicitly recognized that any settlement agreed to by Fast and Basol was subject to the Administrator's approval. The Administrator was not involved in the February phone conversation between Fast and Basol, was never active in the negotiation process, and never made any oral statements to either Fast or Basol regarding settlement.
 {¶ 25} Moreover, the Administrator's express written statements consistently indicate that it contemplated settlement of all of Fast's pending workers' compensation claims, not just those with Basol. The settlement agreement form that the Administrator forwarded to Fast plainly indicated that it
 {¶ 26} Review of the express oral and written statements exchanged between the parties indicates that the Administrator did not assent to the terms as contemplated by Fast and Basol, and therefore no enforceable settlement agreement existed between the Administrator and Fast. Thus, we find that the trial court's finding that an enforceable settlement agreement existed between the Administrator and Fast and Basol was not supported by competent, credible evidence.
 {¶ 27} Accordingly, the Administrator's assignment of error is sustained.
 {¶ 28} Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 BRYANT, P.J., concurs.
[1] Basol is a state funded employer under Ohio's workers' compensation scheme. As such, Basol pays a premium to the Bureau of Workers' Compensation in exchange for coverage of successful workers' compensation claims of Basol employees. The premium rate for each state funded employer is determined by its risk level.
[2] R.C. 4123.512(A) allows a party to appeal the Commission's decision to the proper common pleas court having jurisdiction. Once a party appeals, R.C. 4123.512(D) requires the claimant to file "a petition containing a statement of facts in ordinary and concise language showing a cause of action to participate or to continue to participate in the fund * * *" within thirty days after the filing of the notice of the appeal.
[3] R.C. 4121.121(B)(18) provides that one of the Administrator's duties includes "Pursuant to [R.C. 4123.65], approve applications for the final settlement of claims for compensation or benefits under this chapter * * * as the administrator determines appropriate, except in regard to the applications of self-insuring employers and their employees." R.C. 4123.65 governs application for approval of final settlement of workers' compensation claims. R.C. 4123.65(C) provides, in pertinent part: "No settlement agreed to under division (A) of this section * * * shall take effect until thirty days after the administrator approves the settlement for state fund employees and employers." covered the claims against Basol and "any other" claims; that the parties expressly intended to relinquish and discharge all other claims; and, that no exclusions existed. The Administrator continued to assert in subsequent correspondence to Fast that any settlement would include all claims.