In this appeal from the Trumbull County Court of Common Pleas, appellants, James H. Coxson ("James") and Marlyne Coxson ("Marlyne"), appeal from the trial court's judgment entry awarding them $86,332 in damages resulting from a motor vehicle accident caused by the negligence of appellees, Dell D. Miller ("Miller") and Goodway Transport Company, Inc. ("Goodway").
On September 26, 1992, Miller, who was operating a tractor-trailer within the scope of his employment with Goodway, negligently operated his vehicle, causing an accident in which appellants were injured. Miller and Goodway admit that the accident was caused by their negligence, but contest the extent that the accident proximately caused appellants' damages.
Appellants filed the initial complaint in this matter on September 2, 1994, alleging negligence against Miller and Goodway.[1] Discovery ensued during which both parties procured the depositions of several physicians, including John F. Steele, M.D., an orthopedic surgeon, who gave three separate depositions in the instant litigation. The first such deposition in this case was conducted on October 4, 1995, which largely consisted of cross-examination by appellees' attorney, although appellants' counsel conducted a very brief direct examination. The other two depositions of Dr. Steele in this matter were videotaped on August 19, 1997, one of which related to Marlyne's injuries and the other involved James' treatment. Each of the August 19, 1997 videotaped depositions was ultimately displayed to the jury at trial during appellants' case-in-chief.
One issue explored at trial was whether Dr. Steele ever released Marlyne to return to work at Dairy Mart as an assistant manager. During her direct examination at trial, Marlyne testified that Dr. Steele did not release her to return to work. However, despite appellants' objection, during appellees' case-in-chief, appellees' attorneys read into the record a portion of Dr. Steele's October 4, 1995 deposition in which he indicated that he never released Marlyne for work. Furthermore, in that portion of the deposition read at trial, Dr. Steele stated that he would have released Marlyne to work for light duty if any such duty was available.
In a verdict filed on September 9, 1997, the jury awarded appellants damages in the amount of $86,332, $29,314 of which related to James' injuries, and $57,018 of which resulted from Marlyne's injuries. On September 16, 1997, appellants filed a motion for judgment notwithstanding the verdict, or, alternatively, for a new trial with respect to the amount of damages. Appellant filed a notice of appeal on October 6, 1997, and now asserts the following assignments of error:
 "[1.] The Trial Court erred to the prejudice of Plaintiff-Appellants by admitting into evidence, for the purpose of impeachment, prior inconsistent statements of an expert witness, where no proper foundation had been laid for the admission of such prior statements.
 "[2.] The Trial Court erred in not granting Plaintiff-Appellant's Motion for Judgment Notwithstanding the Verdict, because the Jury's verdict was against the manifest weight of the evidence, and/or the Jury's verdict was in fact against the manifest weight edge [sic] the evidence."
In the first assignment of error, appellants contend that the trial court erred by admitting Dr. Steele's purported prior inconsistent statements relating to Marlyne's ability return to work. Specifically, appellants assert that the trial court erroneously permitted appellees to introduce Dr. Steele's testimony in the October 4, 1995 deposition in which he stated that he would have released Marlyne to return to work at Dairy Mart if any light duty was available.
As a general proposition, the determination of whether a deposition is admissible at trial involves a two-step inquiry: (1) whether the requirements of Civ.R. 32(A) have been satisfied; and (2) whether the evidential material within the deposition is admissible pursuant to the Ohio Rules of Evidence. Civ.R. 32(A)(3) states:
 "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (e) that the witness is an attending physician or medical expert, although residing within the county in which the action is heard * * *."
Moreover, Civ.R. 32(C) states, in pertinent part:
 "The use of subdivision (A)(3)(e) of this rule does not preclude any party from calling such a witness to appear personally at the trial nor does it preclude the taking and use of any deposition otherwise provided by law. At the trial or hearing any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party."
This court has addressed a similar issue in Dodson v. Oclese
(Sept. 30, 1987), Trumbull App. No. 3733, unreported. In that medical malpractice case, the plaintiff-appellant alleged that the trial court erred by permitting a prior deposition to be read into evidence during the defendant-appellee's case-in-chief, although a more recent videotaped deposition of the same physician had been placed into evidence during the plaintiff-appellant's case-in-chief. The plaintiff-appellant argued that "a witness' deposition [cannot] be read into evidence once the witness has appeared 'live' at trial via a videotaped deposition." After quoting the foregoing portions of Civ.R. 32, we rejected the plaintiff-appellant's argument, and held:
 "As demonstrated by the foregoing, Civ.R. 32(C) recognizes no difference between discovery depositions and other types of depositions for use at trial. This relevant civil rule does not limit itself to trial depositions but provides that a deposition may be used for any purpose so long as the witness is a medical expert." Id. at 5.
Similarly, in the present case, appellants presented the videotaped deposition of Dr. Steele, a medical expert, during their case-in-chief. Subsequently, appellees, during their case-in-chief, presented Dr. Steele's statement from his October 4, 1995 deposition that he "would have" released Marlyne to work for light duty if any appropriate positions were available. However, according to the 1995 deposition, Marlyne told him that no such employment was available within Dairy Mart. Thus, pursuant to Dodson, the introduction of the portion of Dr. Steele's 1995 deposition complied with the requirements of Civ.R. 32.
However, appellants argue that Dr. Steele's prior statement was inadmissible under the Rules of Evidence, specifically Evid.R. 613(B), which states:
 "Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to the admission of a party-opponent as defined in Rule 801(D)(2)."[2]
Specifically, appellants assert that appellees did not satisfy the following foundation requirements that must be established in order to impeach a witness through a prior inconsistent statement:
 "(1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." State v. Theuring (1988), 46 Ohio App.3d 152, 155.
Appellants' reliance on Evid.R. 613(B) and Theuring is misplaced because Dr. Steele's statements from the October 4, 1995 deposition were not admitted as impeachment, but instead were admitted as substantive evidence. A close review of the relevant statements by Dr. Steele does not reveal an inconsistency with respect to the question of whether he ever released Marlyne to work at Dairy Mart. During the 1995 deposition, the following exchange occurred:
 "Q. Now you've had the chance to look at your notes. Do you have any indication as to when you released Mrs. Coxson to work.
 "A. I would have on December 10th, [1993] I would
have released her for light duty, and what my note is indicating is that we discussed whether light duty was available and the patient said there wasn't any." (Emphasis added.)
Thus, this testimony only establishes that Dr. Steelewould have released Marlyne for light duty if any were available. However, he accepted Marlyne's assertion that no light duty was available; thus, she could not return to work. Accordingly, Dr. Steele never actually released Marlyne to return to work because he did not believe that, considering her injuries, any appropriate work was available for her. In fact, Dr. Steele reiterated that testimony during the videotaped deposition presented at trial that he would have released Marlyne for any light duty that he deemed to permissible when considering her physical limitations. Therefore, the introduction of this evidence was not subject to the foundation requirements of Evid.R. 613(B).[3] Moreover, we do not perceive any prejudice to appellants from the admission of Dr. Steele's statement that he would have released Marlyne for light duty because it is not actually inconsistent with his other testimony. The primary purpose of that prior statement was to demonstrate that Marlyne did not make every possible attempt to return to work at Dairy Mart by inquiring regarding any positions that might entail light duty.
We note that we also reject appellees' contention that during the 1997 deposition, Dr. Steele was impeached with a prior statement that he made in 1993 in a separate deposition involving Marlyne. Specifically, appellees argue that Dr. Steele stated in the 1993 deposition, which was part of Marlyne's workers' compensation claim, that he had released her to return to work. However, this assertion is incorrect. A review of the appellees' cross-examination of Dr. Steele during the videotaped 1997 deposition reveals that the following exchange occurred:
 "Q. So if the testimony at this trial establishes a light duty position like I have described was offered to Mrs. Coxson, it's your opinion to a reasonable degree of medical probability that her physical condition alone would not prevent her from doing that job?
"A. That is correct."[4]
Thus, the record does not demonstrate that appellees' counsel ever impeached, pursuant to Evid.R. 613(B), Dr. Steele during the 1997 deposition by using any allegedly prior inconsistent statement from the 1993 deposition on the issue of when, if ever, he had released Marlyne to return to work. In summary, despite this flaw in appellees' analysis, the foregoing portion of Dr. Steele's 1995 deposition was admissible both under Civ.R. 32 and the Rules of Evidence. Appellant's first assignment of error is without merit.
In the second assignment of error, appellants essentially assert that the jury's verdict was against the manifest weight of the evidence. As previously stated, the issue of negligence by Miller and Goodway in causing the accident of September 22, 1992, is not in dispute; however, the issue of what damages were caused by that accident is vigorously contested by both parties. As previously stated, the jury awarded James $29,314 in damages and $57,018 in damages to Marlyne, for a total of $86,332.
Initially, we note that appellants have improperly asserted their argumentation with respect to the second assignment of error in terms of the trial court's failure to grant their motions for a new trial and/or a judgment notwithstanding the verdict. However, appellants filed their notice of appeal before the trial court addressed these motions; thus, the trial court was deprived of jurisdiction to address those issues.Powell v. Turner (1984), 16 Ohio App.3d 404, 405; Ford v. TandyTransp., Inc. (1993), 86 Ohio App.3d 364, 384. Therefore, we have no judgment with respect to these motions to review. Accordingly, we will analyze appellants' second assignment of error as an assertion that the trial court's judgment was against the manifest weight of the evidence.
In assessing a claim that a judgment in a civil matter is against the manifest weight of the evidence, the Supreme Court of Ohio has held:
 "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. See, also, Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In the present case, Marlyne suffered the following injuries: fractured left clavicle, contusion of the ribs, cervical strain and sprain, and, arguably a herniated disc. James suffered a fractured rib and cervical strain and sprain. The jury awarded appellants the amount of their medical expenses, plus other additional damages. Appellants assert that the jury lost its way in failing to award appellants more damages for pain and suffering, future medical expenses, and prospective lost wages.
However, the record includes ample evidence that appellants were not entitled to the large amounts of prospective damages claimed by appellants. First, Dr. Steele admitted in a prior deposition that he was not certain whether one of Marlyne's most serious injuries, a herniated disc, was caused by the September 26, 1992 accident, or was a pre-existing condition. Second, the jury had cause to view Marlyne's claim for future lost wages with skepticism because the record indicates that she did not, to say the least, take affirmative action to receive a light duty work assignment with Dairy Mart. Moreover, Marlyne admitted that she did not search for other employment that would have been permissible under her physical restrictions. Third, although Marlyne claimed permanent injuries that inhibited her ability to work at Dairy Mart, she was able to work at a concession stand at flea markets with her husband during the time period she was physically unable to return to work at Dairy Mart.
Additionally, although appellants' argumentation under this assignment of error primarily relates to Marlyne's injuries, we also note that the trial court judgment with respect to James' damages is supported by competent, credible evidence. This is primarily demonstrated by the fact that James was able to return to work just four months following the accident, and Dr. Steele testified that his injuries were not permanent. Thus, the award of $29,314 for James' injuries is supported by competent, credible evidence.
Therefore, based upon the record, the trial court's judgment is supported by competent, credible evidence, and we cannot conclude that the jury lost its way in failing to award appellants a larger award of damages. Appellants' second assignment of error is without merit.
For the foregoing reasons, appellants' assignments of error are not well-taken. The judgment of the trial court is affirmed.
 ------------------------------ PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.
[1] The initial complaint also included a count requesting the court to determine the extent of appellants' coverage under an insurance policy issued by appellee, Westfield Companies. Ultimately, the trial court dismissed the complaint against Westfield, and granted Westfield leave to file an intervenor's complaint against Miller and Goodway. Westfield eventually filed a complaint against Miller and Goodway as an intervenor to assert its claim for subrogation, but Westfield's claim is largely irrelevant to the issues in this appeal.
[2] Evid.R. 613(B) was amended effective July 1, 1998, to incorporate the foundation requirements of Ohio common law.
[3] We note that appellants' assertion that the admission of the 1995 deposition as substantive evidence is hearsay is without merit.
[4] A review of the 1997 videotaped deposition reveals that the only manner that the 1993 deposition was employed during that testimony was to cross-examine Dr. Steele with respect to the issue of whether Marlyne had suffered a herniated disc as a result of the 1992 accident at issue in the present litigation.