[Cite as *DAMSA, Ltd. v. Sandusky*, 2016-Ohio-5069.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| DAMSA, Ltd. | Court of Appeals No. E-15-036 |
| Appellant | Trial Court No. 2015 CV 0100 |
| v. | |
| City of Sandusky, et al. | **DECISION AND JUDGMENT** |
| Appellee | Decided: July 22, 2016 |

* * * * *

D. Jeffery Rengel and Thomas R. Lucas, for appellant.

Michael D. Kaufman, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} Plaintiff-appellant, DAMSA, Ltd., filed an administrative appeal in the Erie County Court of Common Pleas of a decision of defendant-appellee, the city of Sandusky Board of Zoning Appeals ("BZA"). In a judgment entry journalized on May 29, 2015, the trial court concluded that it lacked jurisdiction to consider the appeal because it was

untimely, and it dismissed DAMSA's appeal. In its single assignment of error, DAMSA contends that "[t]he trial court erred in dismissing appellant's timely filed administrative appeal." For the following reasons, we affirm the trial court's judgment.

## I.  Background

{¶ 2} DAMSA applied to the BZA for variances from the city's zoning code. The BZA held a public hearing on January 15, 2015, and voted that same day to deny DAMSA's application. It mailed to DAMSA a notice of denial of the variances, dated January 16, 2015. DAMSA filed a notice of appeal in the trial court on February 13, 2015, which it served by ordinary mail. In addition, the clerk of courts issued the notice via certified mail on February 17, 2015, and it was received by BZA on February 19, 2015.

{¶ 3} On March 11, 2015, the BZA moved to dismiss the appeal for lack of jurisdiction under Civ.R. 12(B)(1) because it was untimely. It contended that under R.C. 2505.07, DAMSA was required to perfect its appeal within 30 days of the January 16, 2015 decision, and under R.C. 2505.04, an administrative appeal is perfected when the notice of appeal is filed with the agency or board. Because it did not receive the notice of appeal until February 19, 2015—two days after the deadline for appeal[1]—it claimed that DAMSA failed to perfect its appeal within 30 days of the decision.

---

[1] This calculation took into account that February 15, 2015, was a Sunday, and February 16, 2015, was a legal holiday.

2.

**{¶ 4}** DAMSA countered that BZA miscalculated the deadline for perfecting the appeal. Its position was that the 30-day deadline did not begin to run until the later of (1) the date DAMSA received the notice of denial, or (2) the date upon which the BZA minutes from the hearing on the variance request were officially adopted. It insisted that it did not receive the notice of denial until January 21, 2015, and the meeting minutes were not adopted by the BZA until February 19, 2015—the same day that the BZA received the notice by certified mail. It also pointed out that it served a copy of its notice of appeal on February, 13, 2015, a "method reasonably certain to accomplish delivery" on or before February 20, 2015.

**{¶ 5}** In a decision journalized on May 29, 2015, the trial court found that DAMSA's notice of appeal was actually filed *prematurely*. In doing so, it relied on our decision in *Harbor Island Assn. v. Ottawa Cty. Regional Planning,* 6th Dist. Ottawa No. OT-02-017, 2003-Ohio-2135, where we held that an administrative order is not a final order until the administrative body approves its meeting minutes. The trial court concluded that it lacked jurisdiction because (1) the BZA did not approve the meeting minutes until February 19, 2015, (2) DAMSA filed its notice of appeal six days earlier on February 13, 2015, and (3) DAMSA failed to file a second notice of appeal within 30 days of the BZA's approval of the minutes. It dismissed DAMSA's appeal.

## II. Law and Analysis

**{¶ 6}** DAMSA claims that the trial court erred in dismissing its appeal as premature because (1) the BZA was served with the notice of appeal on the same day that

3.

it journalized its decision in its official minutes; and (2) under App.R. 4(C) and R.C. 2505.03(B), when an appeal is filed after an administrative body announces its decision, but before the decision being appealed is journalized in the administrative body's official minutes, the notice of appeal is treated as filed immediately after the entry.

{¶ 7} Although the BZA prevailed in the trial court, it submits that the trial court reached the correct result but did so for an incorrect reason. It submits that the court incorrectly relied on *Harbor Island Assn.* in concluding that the BZA decision did not become final until the meeting minutes were formally approved. In support of this argument, it cites *State ex rel. Nicholson v. City of Toledo,* 6th Dist. Lucas No. L-11-1072, 2012-Ohio-4325, where we clarified that an administrative body's journalization of a final order is no longer a requirement of R.C. 2505.07. Instead, we explained, what constitutes a "final order" for purposes of calculating the 30-day appeal period "varies depending on the nature of the administrative body."

{¶ 8} The BZA's position is that its order became final on January 16, 2015, when it mailed the notice of its denial of the variances. And although DAMSA filed its notice of appeal with the clerk of courts within the 30-day appeal deadline, the BZA did not receive the notice of appeal issued by the clerk until February 19, 2015. Accordingly, BZA argues, the appeal was untimely because it was not "perfected" within 30 days, and the trial court properly concluded that it lacked jurisdiction.

{¶ 9} DAMSA contends that even assuming that *Nicholson* controls over *Harbor Island Assn.,* the BZA is wrong for two reasons. First, it claims that the 30-day appeal

4.

period did not begin to run until it received the BZA's notice of denial. It points to the affidavit it submitted in the trial court indicating that DAMSA received the notice of denial on January 21, 2015.[2] Second, it claims that even though the clerk did not serve the BZA until February 19, 2015, DAMSA served the notice of appeal on the BZA via ordinary mail the same day it filed the notice with the clerk—February 13, 2015. It insists that this was "a method reasonably certain to accomplish delivery" by February 20, 2015.

{¶ 10} The right to an appeal is conferred by statute, and compliance with mandatory statutory requirements is essential to invoke the common pleas court's jurisdiction. *Leiphart Lincoln-Mercury, Inc. v. Bowers*, 107 Ohio App. 259, 264-265, 158 N.E.2d 740 (6th Dist.1958). The standard for reviewing the dismissal of a complaint for lack of jurisdiction under Civ.R. 12(B)(1), is whether the complaint has raised any cause of action which the court has authority to decide. *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989). "In determining whether the plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss, the trial court is not confined to the allegations of the complaint and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment." *Ford v. Tandy Transp.*, 86 Ohio App.3d 364, 375, 620 N.E.2d 996 (4th Dist.1993). Whether the complaint contains sufficient allegations to demonstrate the common pleas

---

[2] January 19, 2015, was Martin Luther King, Jr. day, a legal holiday.

5.

court's jurisdiction is generally a question of law which we review independently of the trial court's decision. *Id.*

{¶ 11} As an initial matter, we agree with the BZA that *Nicholson*—not *Harbor Island Assn.*—is controlling. In *Nicholson,* decided in 2012, we made clear that "[j]ournalization of a final order of an administrative body * * * has no longer been a requirement since the Ohio General Assembly amended R.C. 2505.07 in 1987." *Nicholson* at ¶ 21. Thus, the January 16, 2015 notice may constitute a final order, notwithstanding the fact that the meeting minutes were not formally approved until February 19, 2015.

{¶ 12} Under R.C. 2506.01(C), a "final order, adjudication, or decision means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person." In *A.M.R. v. Zane Trace Local Bd. of Edn.,* 2012-Ohio-2419, 971 N.E.2d 457, ¶ 15 (4th Dist.), the court explained that this definition encompasses more than just board minutes. In *A.M.R.,* the court found that a letter from a school district superintendent to the attorney of a student who was being suspended was a "final order" where the letter was dated; was written on school district letterhead; was sent by the superintendent in her capacity as executive officer of the board; and unequivocally recited the board's decision.

{¶ 13} Here, too, the BZA's January 16, 2015 notice of denial was sent on the letterhead of the Department of Planning and Development, was signed by the assistant planner, and unequivocally stated that the BZA had denied the request for variances.

6.

Under these circumstances, it was sufficient to constitute a "final order" under R.C. 2506.01(C).

{¶ 14} Having determined that the January 16, 2015 notice constituted a "final order," we must next determine whether the 30-day appeal period began to run on January 16, 2015, the day it was dated, or January 21, 2015, the day DAMSA received it. We must also determine whether it was timely received by the BZA.

{¶ 15} As to the first issue, DAMSA cites *Roberts v. Pleasant Loc. Sch. Dist. Bd. of Edn.*, 3d Dist. Marion No. 9-11-04, 2011-Ohio-4560, ¶ 13, for the proposition that "in order for jurisdiction to be vested in the court of common pleas, an appellant must file a notice of appeal with the agency from which the appeal is being taken *within thirty days* of *receiving the agency's written decision.*"  (Emphasis added.)  *Roberts,* however, involved an appeal from a decision not to renew a teacher's contract brought under R.C. 3319.11.  R.C. 3319.11(G)(7) specifies that an appeal must be filed "within thirty days of the date on which the teacher *receives* the written decision."  (Emphasis added.)   R.C. 2505.07, on the other hand, indicates that the time begins to run "[a]fter the *entry* of a final order * * *."  (Emphasis added.)  The time for appealing the BZA decision, therefore, began to run on January 16, 2015.

{¶ 16} Because the time for filing a notice of appeal began to run on January 16, 2015, DAMSA's appeal was timely only if it was filed with the BZA by February 17,

7.

2015.[3]  In *Welsh Dev. Co. v. Warren Cty. Regional Planning Comm.,* 128 Ohio St.3d 471, 2011-Ohio-1604, 946 N.E.2d 215, ¶ 39, the Ohio Supreme Court made clear that "[f]iling does not occur until there is actual receipt by the agency within the time prescribed by R.C. 2505.07."  It went on to say that "[t]he appellant may use any method reasonably certain to accomplish delivery to the agency within the required 30 days * * *."  *Id.* at ¶ 40.

{¶ 17} The return receipt from the clerk's service of the appeal notice makes clear that the BZA did not receive the notice of appeal from the clerk until February 19, 2015. And while DAMSA's notice of appeal includes a certificate of service indicating that it also sent a copy of the notice of appeal to the BZA via ordinary mail on February 13, 2015, DAMSA contends only that this method was reasonably certain to accomplish delivery by February 20, 2015.  As we have already determined, this is beyond the deadline by which DAMSA was required to file its notice of appeal with the BZA.

{¶ 18} We, therefore, agree with the trial court that it lacked jurisdiction, albeit for a reason other than that cited in its judgment.  Accordingly, we find DAMSA's sole assignment of error not well-taken.

---

[3] Again, this date takes into account the fact that the 30-day period ended on Sunday, February 15, 2015, and was followed by a legal holiday on Monday, February 16, 2015.

8.

### III.  Conclusion

{¶ 19} For the foregoing reason, we find DAMSA's single assignment of error not well-taken, and we affirm the May 29, 2015 decision of the Erie County Court of Common Pleas.  DAMSA is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.              _____

                                                              JUDGE

Thomas J. Osowik, J.                 

                                                            _____

Stephen A. Yarbrough, J.                                         JUDGE
CONCUR.

                                                            _____

                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.